## 20592. ALLEN *v.* THE STATE.

HAWKINS, Justice. A. D. Allen, Jr., was jointly indicted with Charles Paul (Rockey) Rothschild for the murder of Charles Drake. The defendant Rothschild pleaded guilty and was sentenced to life imprisonment. The defendant Allen pleaded not guilty, and upon his trial was convicted with a recommendation of mercy and sentenced to life imprisonment. To the judgment denying his motion for a new trial, containing the usual general grounds, and four special grounds, complaining of the manner in which the jury was attended by the bailiffs in charge of them during the time they were kept together at night, he excepts.

While it is not insisted by the State that the defendant Allen shot and killed the deceased, it is insisted, and Rothschild so testified on the trial of Allen, that he and Allen entered into a conspiracy to rob the deceased; that Allen was to receive a certain percentage of whatever sum Rothschild obtained in the robbery; that Rothschild called Allen in Winder, Georgia,

from Athens, Georgia, and Allen came to Athens to meet him in about forty-five minutes; that Allen instructed Rothschild to meet him that night at Tomlin's Drive-In in Winder; that he did so about 7:30 or 8 o'clock, when it was getting dark; that Rothschild was driving a car belonging to one Patterson, which was described as an old-model, blue-colored Plymouth, which he was unable to start after he arrived at Tomlin's Drive-In, and Rothschild asked a policeman to call Allen to come push him off, which Allen did; that the Patterson car was parked at a church, and Allen took Rothschild in Allen's car and drove by the home of the deceased, which was pointed out by Allen, and they agreed upon the point at which Allen was to pick Rothschild up after the robbery; that, in the attempt by Rothschild to rob Drake, the latter was shot and killed; that Allen picked Rothschild up at the place agreed upon, and Rothschild changed from a suit of olive-colored coveralls into other clothes which were in Allen's car, and removed his cap and shoes and placed a silk stocking, which he had used as a mask, in his pocket, and Allen hid the shoes, cap, and stocking behind some bushes upon a bank beside the road; that, at the instance of Allen, the pistol with which Rothschild had shot Drake was thrown into a creek or branch; that they then went to the Patterson car, which Rothschild entered, and was told by Allen to follow him; that they got on some more roads and in a short time ran into a road blocked by a police car; that the police motioned Allen on through and then motioned Rothschild through with the Patterson car; that they went to 'an old field, where Allen left Rothschild with the statement that he would return later; that he later came back and told Rothschild that he would show him the way to Atlanta; that he, Rothschild, came on to Atlanta, and had not seen Allen since. Rothschild also testified that "I used a 38 nickel-plated Smith & Wesson pistol. That is the gun that was used in the murder." *Held*:

1. The second special ground of the motion for new trial complains that the bailiffs in charge of the jury went to bed in separate rooms from some of the jurors, thereby failing to remain with the jury at all times and thereby failing to remain awake at all times while the jury was in the care of these bailiffs, which fact was unknown to the defendant or his counsel until after the rendition of the verdict in said case. There is attached to the amended motion in

support of this ground an affidavit by O. C. Sailors, one of the bailiffs in charge of the jury, in which he stated that he and J. B. Alexander had charge of the jury while they were at a named motel; that the jury, composed of fourteen men, which included two alternate jurors, occupied at least six separate rooms in said motel, and "Affiant says that said J. B. Alexander had a room to himself and affiant occupied a room with one of the jurors. Affiant says that he and said J. B. Alexander went to sleep at night in their respective rooms while the said jury was in retirement and in separate rooms." There are affidavits by the defendant and his counsel that they did not know of these facts until after the rendition of the verdict. While the State offered in rebuttal the affidavits of all of the jurors that no improper communication or conduct was had by or with them at any time while they were engaged in the trial of the case, an examination of the record on file in this court in *Blount* v. *State,* 214 *Ga.* 433 (4) (105 S. E. 2d 304), discloses that a like showing was made in that case with respect to a similar ground, and this court there held: "With reference to ground 14, complaining because the bailiff left the jury and went to bed in a separate room, we find that this practice was error. It is the duty of the bailiff to look after the jury at all times and to remain with the jury and remain awake at all times while they are in his care. His failure to do so in this case constitutes such misconduct as to entitle the defendant to a new trial."

2. As pointed out by this court in *Price* v. *State,* 208 *Ga.* 695, 696 (3a) (69 S. E. 2d 253), "The rule is well established that, to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt. Code § 38-121; *Childers* v. *State,* 52 *Ga.* 106; *Middleton* v. *State,* 52 *Ga.* 527; *Blois* v. *State,* 92 *Ga.* 584 (20 S. E. 12); *McCrory* v. *State,* 101 *Ga.* 779 (1) (28 S. E. 921); *Myers* v. *State,* 151 *Ga.* 826 (3) (108 S. E. 369); *McCalla* v. *State,* 66 *Ga.* 346; *Chapman* v. *State,* 112 *Ga.* 56 (2) (37 S. E. 102); *Whaley* v. *State,* 177 *Ga.* 757 (2) (171 S. E. 290); *Lanier* v. *State,* 187 *Ga.* 534 (1

S. E. 2d 405)." While there was ample evidence in this case to corroborate the testimony of the defendant Rothschild as to his commission of the offense charged, the only evidence we have been able to find in the record offered by the State to corroborate the testimony of Rothschild as to Allen's connection with the crime is: the testimony of Speer McElroy, a Winder policeman, that he saw the defendant Allen in front of Tomlin's Drive-In, in Winder, Georgia (which is several miles distant from the scene of the killing near Jefferson), on the night in question, when he was called there to push off "a faded out, old model automobile"; that he knew the defendant Allen, but did not know the man Allen pushed off; that the defendant pushed the car off, it cranked, caught up, and went on down the highway toward Atlanta; that he called the police station by radio and had the boy on the desk to call Allen to come and push the car off, and his testimony as to this call by the policeman was substantiated by the police department radio operator; the testimony of George Crane, the principal stockholder, and Joseph Howard Sims, an employee, of Sportsman's Inc., of Athens, Georgia, that they handled and cleaned guns, and they knew Allen; that sometime during the year 1957, Allen brought them a very rusty 38 Smith & Wesson, nickel or chrome plated pistol to be cleaned; the testimony of Deputy Sheriff J. R. Austin that, on the night of June 19, 1956, he had a road block set up at the intersection of Georgia Highways 53 and 11, one the Jefferson road and the other the Gainesville road, and that the defendant Allen came through that road block driving a Ford car, and that he saw a faded blue-colored Plymouth, driven by a white man whom he did not know, come from Winder towards Jefferson; that he did not motion this car through the road block, but that some other policeman might have done so; and testimony of Patterson, owner of the Plymouth car, who testified that he had communicated with Allen three or four times since the homicide at the instance of Rothschild; that he had relayed messages to him from Rothschild in the name of "Red," the name Rothschild told him Allen knew him by; that the first message was that it was too hot in this part of the country for Rothschild, and that he could not come back right away; and on another occasion that Rothschild wanted to know if everything was all right with him, and that Allen said, "Yes, it was." While this evidence might

be sufficient to cast on the defendant a suspicion of guilt, it is insufficient, aside from the testimony of the joint defendant, to connect the defendant Allen directly with the crime, or lead to the inference that he is guilty. It was therefore error to overrule the general grounds of the motion for new trial.

*Judgment reversed. All the Justices concur.*

Argued September 14, 1959—Decided October 9, 1959—
Rehearing denied November 4, 1959.

*Wm. E. Spence, James Cecil Hughes*, for plaintiff in error.

*Alfred A. Quillian, Solicitor-General, H. W. Davis, Jack S. Davidson, Jr., Hope D. Stark, Eugene Cook, Attorney-General, Rubye G. Jackson, Deputy Assistant Attorney-General*, contra.