## 37567. MILTON v. THE STATE.

HILL, Presiding Justice.
Clyde Milton and Theodore Grant were indicted and convicted for first degree arson and murder. Defendants received life sentences on the murder convictions and five years on the arson convictions, to be served consecutively. Defendant Milton's motion for a new trial was denied and he appeals.

On December 28, 1979, Savannah fire fighters answered a call on Habersham Street at approximately 3:45 a.m. They found the burning body of Mundy J. Hiott on the kitchen floor of his apartment.

Carrie Lee Williams was the principal witness for the state. She too had been indicted for first degree arson and the murder of Mundy J. Hiott. However, the state agreed to dismiss the charges in exchange for her testimony. Ms. Williams had given three statements prior to trial, each of which were inconsistent with the others. Her testimony at trial was still a different account of what actually had transpired.

Ms. Williams gave her first statement on March 10, 1980, over two months after the murder. She told police that she had heard about the murder from associates at the High Hat Lounge. She stated that she did not know how the victim was killed, that she was not there but that Theodore Grant's name was mentioned in connection with the murder. She stated that she knew the victim, that he was a good man and that he used to buy drinks for her. She told police that Clyde Milton was involved in the murder also.

On March 11, 1980, Ms. Williams gave police another statement. She said that she was at the High Hat Lounge and that Theodore Grant was also there. When she learned that he wanted to talk to her, she became frightened and left. She went to the residence of the victim alone at approximately 9:00 p.m. The victim, whom she "had been seeing for about eight months," let her in the apartment. They had sexual intercourse after he paid her $20.00. Afterwards, Milton and Grant gained entry through the back door of the apartment, which was never locked. They demanded money, were refused and a struggle ensued between Milton and the victim. Grant allegedly struck the victim on his head with a pipe and the victim fell to the floor. Milton and Grant then dragged the victim's body into the kitchen, searched the dresser drawers, and found and took some watches. Milton then took a red can and poured its contents on the body. Grant ignited it. Ms. Williams, Grant and Milton then left through the back door where they met another man with whom Grant and Milton left. Ms. Williams went home to her boyfriend, arriving at approximately 11:30 p.m. The following day Grant went to Ms. Williams' house and told her that if she told the police what had happened, she would not live long.

On May 15, 1980, Ms. Williams gave a third statement to Savannah police. She said that Grant approached her in the High Hat Lounge and invited her out with him. She declined and went outside. He followed her out, beat her and forced her to go with him. They and Milton went to the victim's apartment. She went in alone, took off her clothes and unlocked the back door to let Grant and Milton in the apartment. Milton pulled a gun and demanded money from the victim. When the victim refused, Milton then hit him in the head with a piece of pipe. Grant then dragged the victim's body into the kitchen, poured gasoline on it and ignited it. When they left, Ms. Williams fled from Grant and Milton. Sometime during these events, Grant and Milton took $200 and some watches.

At trial, Ms. Williams testified that Grant forced her to go with him to the victim's apartment and that she went because she was terrified and afraid of Grant. After the victim let her in, she took off her clothes and opened the back door for Grant and Milton. They entered, told the victim to get out of bed and demanded money. When he refused, Milton hit the victim in the head with a hammer. Grant searched the dresser drawers and took several watches and $200. Grant then dragged the victim to the kitchen, threw gasoline on him and burned him. She identified a hat and shirt, which had the victim's blood on it and were found in the victim's apartment, as belonging to Milton. On cross examination, Ms. Williams testified that she had known the victim for approximately one year. She

denied ever having had sexual intercourse with him. When cross examined as to the inconsistencies contained in all of her prior statements and her direct testimony at trial, she renounced the pretrial statements as false.

The pathologist who performed the autopsy testified that the cause of death was a blow to the head which fractured the skull and resulted in hemorrhage; that the blow to the head could have been made with a hammer or pipe; and that the victim died before he was burned. The forensic serologist testified that blood found on a hat and shirt identified by Ms. Williams as belonging to Milton and which detectives found in the victim's apartment was probably that of the victim. The hammer which was the alleged murder weapon had no traces of blood on it, however. A microanalyst from the state crime laboratory testified that the victim had a .39 blood alcohol level. He also testified that the fluid used to burn the body was Coleman fuel. A certified arson investigator testified that Savannah fire fighters responded to the fire at the victim's apartment at approximately 3:59 a.m. and that the fire could not have been started before 1:00 a.m. but probably started as late as 3:45 a.m.

Milton testified in his own behalf. He denied knowing his co-defendant until they were placed at Chatham County Jail after his arrest on the instant charges. He testified that he did not know Carrie Lee Williams. He also testified that he and his wife went to his mother-in-law's house on the night in question and from there went home. Milton's wife and mother-in-law corroborated his testimony.

1. Relying on Giglio v. United States, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972), the defendant argues that the trial court erred in denying his motion for a mistrial on the ground that the district attorney failed to disclose to the jury "the fact and substance of any deal made in exchange for the testimony of" Ms. Williams, the state's only eyewitness. Defendant further urges that the fact that the district attorney didn't disclose the agreement to the jury may well have led the jury to believe that she was blameless and not an accomplice.

After the jury in this case was selected, the case of the State versus Carrie Lee Williams was called and the first twelve jurors who had been excused in the case before us were impaneled as the jury in the case against Ms. Williams, by agreement between the state and her counsel. Immediately after these jurors were sworn in Ms. Williams' case, the state announced that it dismissed the charges against her in return for her testimony. The trial court explained to the jurors that the defendant had agreed to testify in another case and as part of the agreement it had been agreed that the charges against her would be dropped and the only way to protect her from

later prosecution was to impanel and swear a jury. With that, the Williams jury was excused.

In the opening statement, defense counsel stated to the jury in the case before us that although Ms. Williams had been indicted for these crimes, within the last couple of hours the state had dismissed the charges against her in exchange for her testimony. On cross examination, the defense showed that the charges against Ms. Williams had been dismissed. In closing argument the defense repeated that Ms. Williams had testified in exchange for her freedom.

Defendant urges that under Giglio v. United States, supra, the *prosecutor* has the duty to disclose *to the jury* that a witness has been promised he will not be prosecuted in exchange for his testimony. In Giglio the government's key witness testified that he had not been told he would not be prosecuted; that testimony was false; and the falsity of that testimony was not made known to the jury. Although Giglio may have been broadened to include nondisclosure of an agreement between the government and a key witness regardless of whether the witness testifies falsely, see United States v. Tashman, 478 F2d 129 (5th Cir. 1973), we find no Giglio violation here where the dismissal of charges against Ms. Williams in exchange for her testimony was made known to the defense. *Echols v. State,* 231 Ga. 633, 636 (203 SE2d 165) (1974).

Defendant urges that when it dismissed the Williams jury the trial court indicated that "part of the agreement is that if she agrees to testify, the charges will be dropped" and that the remainder of the agreement was not disclosed. It appears that the other part of the agreement was that a jury would be impaneled and sworn so that prosecution of Ms. Williams would be barred and she would not have to rely on the prosecutor's agreement not to prosecute. In any event, defense counsel could have cross examined Ms. Williams as to the entire agreement and if she had testified falsely concerning the agreement, Giglio would have required the prosecutor to disclose it. We find no Giglio error here.

Nor do we find any violation of Green v. Georgia, 442 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979). A person cannot successfully defend a murder charge on the ground that he or she was coerced into committing murder. Code § 26-906. Hence the state in indicting Ms. Williams for murder and yet urging that she was not an accomplice insofar as the corroboration requirement is concerned (see Division 2) is not taking inconsistent positions as between co-defendants.

2. Milton argues that the trial court erred in overruling his motions for directed verdict and new trial when the state's sole evidence connecting him to the crimes was the uncorroborated testimony of an accomplice.

Code § 38-121 provides that the testimony of a single witness is generally sufficient to establish a fact, except in specified cases including any case of felony where the only witness is an accomplice, in which case corroborating circumstances may dispense with another witness.[1] "The law is settled in Georgia that the corroborating facts or circumstances must connect the defendant to crime or lead to the inference that he is guilty, and that such corroboration must be *independent* of the accomplice's testimony. *Allen v. State,* 215 Ga. 455 (111 SE2d 70); *Price v. State,* 208 Ga. 695 (69 SE2d 253). . . . Under § 38-121, testimony which concerns the identity of other participants must be corroborated by some means independent of the testimony of the accomplice. One who is guilty of a crime in which he participated will always be able to relate the facts of the case and if the corroboration goes only to the truth of that history, without identifying the person accused, it is really no corroboration at all." *West v. State,* 232 Ga. 861, 864-865 (209 SE2d 195) (1974).

An accomplice is one who acts as the result of free will and not of duress or coercion. *Fortner v. State,* 96 Ga. App. 855 (2) (101 SE2d 908) (1958); *Perryman v. State,* 63 Ga. App. 819 (1) (12 SE2d 388) (1940). And where a witness testifies that he or she was forced to accompany the defendants out of fear of one or both of them, it is for the jury to determine whether the witness is an accomplice. *Callahan v. State,* 209 Ga. 211 (8) (71 SE2d 86) (1952); *Montford v. State,* 144 Ga. 582 (2) (87 SE 797) (1916).

The fact that a witness was jointly indicted with the defendant on trial does not of itself render such witness an accomplice. *Street v. State,* 179 Ga. 636 (2) (176 SE 633) (1934). In *Almand v. State,* 149 Ga. 182 (1b) (99 SE 795) (1919), the court held that it was not error to submit to the jury the question of whether a witness for the state was or was not an accomplice even where the witness had confessed to being an accomplice and had been jointly indicted with the defendant on trial. See also *Hargrove v. State,* 125 Ga. 270 (1) (54 SE 164) (1906).

The trial judge charged the jury as to the definition of an accomplice and as to the requirement of corroborative testimony as follows: "The definition of an accomplice is one who was present at

---

[1] This rule — that the uncorroborated testimony of an accomplice alone is not sufficient to establish a fact — is not the rule in federal courts. Holmgren v. United States, 217 U. S. 509, 523-524 (30 SC 588, 54 LE 861) (1910); Davis v. United States, 411 F2d 1126,1128-1129 (5th Cir. 1969); Wright, Federal Practice and Procedure, Criminal, §§ 405, 490 (1969).

the commission of a crime, aiding and abetting the perpetrator. Participation in the commission of the same criminal act and in the execution of a common criminal intent is necessary to render one a criminal in a legal sense, an accomplice of the other. Presence, companionship, and conduct before and after the offense and circumstances which one's participation in the criminal intent may be differed [sic]. Whether or not to infer this is a matter solely to your discretion.

"If from all the facts and circumstances of this case you find that Carrie Lee Williams is an accomplice, as I have previously defined this term, you would then have to determine whether there is evidence, other than her testimony, which identifies either or both defendants as the perpetrator in the crimes of which they are charged.

"Although the testimony of a single witness is generally sufficient to establish a fact; the testimony of an accomplice who is the only witness in a felony case requires corroboration. Slight evidence from an independent source identifying the defendants as a participant of the scheme can be sufficient corroboration of the testimony of one accomplice. The sufficiency of the corroborating evidence is a matter to be determined by the jury." The jury returned to be recharged on the definition of an accomplice and the necessity of corroboration.

The district attorney argues here, as he did to the jury, that the shirt, hat and hammer found at the scene of the crime corroborated Ms. Williams' testimony inasmuch as she identified them as belonging to defendant Milton. The Attorney General argues that Ms. Williams was not an accomplice as her testimony shows that she acted out of fear and coercion. A witness may be found not to be an accomplice due to coercion so as to eliminate the requirement of corroboration in a murder trial, *Callahan v. State, Almand v. State, Street v. State, Montford v. State,* supra, even though such person, if charged with murder, could not successfully use coercion as a defense to the charges. See Code § 26-906. Thus, we can agree with the Attorney General but cannot agree with the district attorney. Ms. Williams cannot corroborate her own testimony that the defendant committed this crime by adding that the shirt and hat found at the scene belonged to the defendant. No other witness identified the shirt and hat as belonging to the defendant.

Hence we find that although the trial court did not err in overruling the motion for directed verdict in that the jury would have been authorized to find that Ms. Williams acted under such coercion that she reasonably believed that it was the only way to prevent her imminent death or great bodily injury, and thus she was not an

accomplice, the trial court did err in not granting the defendant a new trial because under the charge of the court the jury could have found that Ms. Williams was an accomplice and that her testimony, as the district attorney argued, was corroborated, when her testimony was not corroborated as required by law.

3. Defendant enumerates error on the trial court's failure to grant mistrials due to the district attorney's failure to provide the names of 15 witnesses until after opening statements to the jury, and due to two witnesses for the state putting his co-defendant's character in issue. These issues are not likely to arise on the re-trial, or can be prevented from arising, and hence it is unnecessary for us to decide them.

*Judgment reversed. Jordan, C. J., Hill, P. J., Marshall, Clarke, Smith and Gregory, JJ., concur.*

DECIDED SEPTEMBER 23, 1981.

*Brantley & Associates, Samuel J. Brantley, Mark Bulovic,* for appellant.

*Spencer Lawton, Jr., District Attorney, Robert M. Hitch III, Gordon Smith, Assistant District Attorneys, Arthur K. Bolton, Attorney General, Charles E. Brown, Staff Assistant Attorney General,* for appellee.

