A90A1602. BROWN v. THE STATE.
(404 SE2d 154)

McMURRAY, Presiding Judge.

Defendant was charged in a multi-count indictment with theft by taking of two air conditioning units belonging to Jerry Harper (Counts 1 & 2). In five other counts, defendant was charged, along with a co-defendant, with burglarizing the home of James T. Roberts (Count 3); burglarizing the home of Gary Law (Count 4); burglarizing the home of Johnny Ivemeyer (Count 5); theft by taking of electrical equipment and ladders belonging to Johnny Ivemeyer (Count 6) and burglarizing Varnell Hendley's storage building (Count 7). Defendant pleaded not guilty to all counts of the indictment. The co-defendant pleaded guilty on Counts 3 through 7 of the indictment and was later listed as a State's witness.

At a jury trial, the co-defendant testified that he and defendant committed the crimes charged in Counts 3 through 7 of the indictment and that defendant informed him that he "and one other man got . . ." Jerry Harper's air conditioning units. The co-defendant further testified that defendant approached him after he gave an incriminating statement to law enforcement officers and that defendant then attempted to induce him to perjure himself at defendant's trial. The co-defendant testified that he thereafter informed law enforcement authorities of defendant's attempt to suborn perjury; that he consented to being equipped with a body wire transmitter; that he attempted to locate defendant two or three times while equipped with the body wire transmitter; that he located defendant at an apartment complex; that law enforcement officers took him "to where [defend-

ant] was . . . ." and that he then attempted to induce defendant to incriminate himself.

The State introduced a tape recording of the co-defendant's conversation with defendant at trial and a transcript of this recording reveals that the co-defendant's remarks to defendant prompted defendant to make incriminating statements. Defendant was found guilty of theft by receiving stolen property under Counts 1 and 2 of the indictment and guilty of the crimes charged in the remaining counts of the indictment. This appeal followed the denial of defendant's motion for new trial. *Held*:

1. Defendant contends that his Sixth Amendment right to counsel was violated by the admission of the tape recorded conversation between him and the co-defendant.

Generally, a defendant "[has] no right to rely on privacy of any of his conversations with his co-conspirators. They [are] under no legal duty to him not to record or divulge what he said. [Cits.]" *State v. Birge*, 240 Ga. 501, 502 (241 SE2d 213). However, after the initiation of formal charges and after a defendant has exercised his Sixth Amendment right to counsel, the State may not intercept or compel incriminating information from the defendant through the subterfuge of an undisclosed informant. *Maine v. Moulton*, 474 U. S. 159, 176 (106 SC 477, 88 LE2d 481).

"The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State. . . . [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. Thus, the Sixth Amendment is not violated whenever — by luck or happenstance — the State obtains incriminating statements from the accused after the right to counsel has attached. See [*United States v. Henry*, 447 U. S. 264, 276 (100 SC 2183, 65 LE2d 115)] (POWELL, J., concurring). However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." (End note omitted.) *Maine v. Moulton*, 474 U. S. 159, 176, supra.

In the case sub judice, law enforcement officers sought to obtain incriminating information from defendant through the use of the co-defendant's undisclosed body wire transmitter while defendant was

under indictment and after defendant exercised his Sixth Amendment right to counsel and had pleaded not guilty.[1] Since defendant had no knowledge that co-defendant was an agent for the State during the tape recorded conversation, defendant was denied the opportunity to consult with counsel and thus denied the assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution. Consequently, the trial court erred in allowing the State to introduce evidence of the tape recorded conversation between defendant and the co-defendant which included incriminatory statements by defendant concerning at least some of the offenses for which he had already been indicted. Consequently, defendant must be accorded a new trial.

2. In his second enumeration, defendant contends the trial court erred in allowing evidence of an alleged similar transaction, arguing that there was insufficient evidence to show that he was the perpetrator of the alleged similar crime. More specifically, defendant argues that the only indication that he was in possession of goods taken during the alleged similar crime was a law enforcement officer's hearsay testimony that the serial number on electrical equipment found in defendant's truck matched the serial number of electrical equipment taken during an alleged similar theft.

Chief Investigator Randy Bagley of the Ben Hill County Sheriff's Department testified that he executed a search warrant for defendant's truck and that he found electrical equipment which he suspected were objects of local thefts. The chief investigator further testified that he went to a local "Radio and TV" shop "to see if there was some identification on [the equipment and that] Mr. Bill Griffin took the cover off of the [equipment], obtained the serial number, and checked in his files and determined that it did belong to [the victim of an alleged similar theft]." Defendant argues that this testimony was insufficient to show that the electrical equipment found in defendant's truck was the same as the equipment stolen during the alleged similar transaction. We agree.

Chief Investigator Bagley received information regarding the serial number of stolen equipment from a man who had access to a business record which purportedly reflected the serial number of said stolen equipment. There is no evidence showing that Chief Investigator Bagley had actual knowledge of the serial number of the equipment stolen during the alleged similar transaction and there is no evidence that the business record which purportedly reflected the serial num-

---

[1] The co-defendant testified that he affirmatively sought defendant while wearing the wire body transmitter so that he could "talk with [defendant] about [the defendant's attempt to suborn perjury] and [to] go back over what [the co-defendant] was to get up [during defendant's trial] and tell the jury."

ber of the stolen equipment was properly introduced into evidence. *Moore v. State*, 154 Ga. App. 535, 538 (268 SE2d 706); *Porterfield v. State*, 150 Ga. App. 303, 304 (257 SE2d 372). See *Cawthon Motor Co. v. Scheufler*, 153 Ga. App. 282, 285 (1) (265 SE2d 96), and Green, Ga. Law of Evidence (3d ed.), § 313, p. 518. Consequently, Chief Investigator Bagley's identification testimony of the electrical equipment found in defendant's truck was inadmissible hearsay and therefore had no probative value in proving that defendant was either in possession of stolen goods or that he was the perpetrator of the alleged similar transaction. See *Curtis v. State*, 190 Ga. App. 173, 174 (2), 175 (378 SE2d 516).

3. In his third enumeration, defendant contends the trial court erred in allowing the State's attorney to cross-examine him on matters regarding the attorney-client privilege. Any error reflected in this enumeration is highly unlikely to occur upon re-trial. See OCGA § 24-9-27 (c); *Felts v. State*, 244 Ga. 503, 505 (4) (260 SE2d 887); Green, Ga. Law of Evidence (3d ed.), § 179, p. 331. Consequently, it is unnecessary to address this enumeration of error.

4. Defendant asserts the general grounds in his final enumeration, arguing that there was insufficient evidence to corroborate the co-defendant's testimony linking defendant to the crimes charged.

"In Georgia, a defendant may not be convicted on the uncorroborated testimony of an accomplice. OCGA § 24-4-8 (Code Ann. § 38-121). The corroboration must be independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty. *Allen v. State*, 215 Ga. 455 (111 SE2d 70) (1959). 'However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. (Cit.) Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support the verdict. (Cit.)' *Reaves v. State*, 242 Ga. 542, 543 (250 SE2d 376) (1978)." *Castell v. State*, 250 Ga. 776, 778 (1 c), 780 (301 SE2d 234).

(a) *Theft by Receiving Stolen Property (Counts 1 & 2)*. Defendant was indicted under Counts 1 and 2 for *theft by taking* of Jerry Harper's two air conditioning units, but the jury found him guilty of *theft by receiving stolen property*, the air conditioning units. This was an illegal verdict because theft by receiving stolen property is not a lesser included offense of theft by taking alleged in the indictment. "They are two completely different crimes, having different elements, and are in fact, so mutually exclusive that the thief and the receiver cannot even be accomplices. *Plummer v. State*, 126 Ga. App. 482, 483 (191 SE2d 333)." *Sosbee v. State*, 155 Ga. App. 196, 197 (270 SE2d 367). See *Lee v. State*, 259 Ga. 230, 232 (3) (378 SE2d 855).

" ' "It is an elementary principle of criminal procedure that no

person can be convicted of any offense not charged in the indictment. There may, of course, be a conviction of a lesser offense than that expressly named in the indictment, where the former is necessarily included in the latter, and also in some cases in which the lesser is not so included in the greater offense but where the language used in the indictment is sufficient to embrace the smaller offense." (Cit.). . . . The gravamen of the offense of receiving stolen (property) is that the defendant purchased or obtained (it) from a third person, knowing at the time that (it) had been stolen by another. (Cit.)" *Adams v. State*, 164 Ga. App. 295, 296 (297 SE2d 77) (1982). Further, " ' "it has uniformly been held that burglary, larceny or robbery is an entirely separate offense from that of receiving stolen (property) and that there can be no merger." (Cits.)' *Adams v. State*, 164 Ga. App. 295, 296[, supra]." *Holloman v. State*, 168 Ga. App. 683 (1), 684 (310 SE2d 734). Consequently, since theft by receiving Jerry Harper's stolen air conditioning units was not expressly charged in the indictment and could not be deemed to be included in the offenses charged in Counts 1 and 2, defendant could not have been convicted of theft by receiving Jerry Harper's stolen air conditioners. It therefore follows that defendant's convictions under Counts 1 and 2 cannot stand. *Holloman v. State*, 168 Ga. App. 683 (1), 684, supra.

(b) *Burglary of the home of James T. Roberts (Count 3)*. The codefendant testified that he and defendant broke into the home of James T. Roberts and stole several pieces of electrical equipment. More specifically, the co-defendant explained that after he and defendant entered the Roberts house he "waited on [defendant] to show [him] where the stuff was at that [the men] was going to get." The co-defendant also testified that he and defendant then "went back in the house into a little room and opened the door and . . . got [several pieces of electrical equipment]." The co-defendant further testified that he and defendant gave the equipment to "Rozier Mills . . . as parts because they . . . wasn't any good, they wouldn't work." James T. Roberts corroborated this evidence, testifying that defendant had been in his house before the burglary and that defendant was the only person outside his family who was familiar with the storage location of the equipment which was taken from the Roberts home. Other corroborating evidence showed that the equipment stolen from Roberts' home was "recovered from Rozier Mills place of business" and that other stolen items, which were sold to Rozier Mills by defendant, were recovered at Rozier Mills' place of business. This corroborating evidence sufficiently supported the co-defendant's testimony that defendant committed the burglary at James T. Roberts' home. *Dobbs v. State*, 180 Ga. App. 714, 715 (1) (350 SE2d 469). Further, the evidence adduced at trial was sufficient to authorize the jury's finding that defendant was guilty, beyond a reasonable doubt, of the crime

charged in Count 3 of the indictment. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

(c) *Burglary of the home of Gary Law (Count 4)*. The co-defendant testified that he and defendant burglarized the home of Gary Law. This testimony was sufficiently corroborated by evidence that goods stolen from Gary Law's home were found in defendant's storage barn. *Dobbs v. State*, 180 Ga. App. 714, 715 (1), supra. The evidence adduced at trial was sufficient to authorize the jury's finding that defendant was guilty, beyond a reasonable doubt, of the crime charged in Count 4 of the indictment. *Jackson v. Virginia*, 443 U. S. 307, supra.

(d) *Burglary and theft by taking at the home of Johnny Ivemeyer (Counts 5 & 6)*. The co-defendant testified that during July of 1987 he and defendant "went up to [Johnny Ivemeyer's] house [in defendant's truck] and . . . got a CB antenna, and [that they] went into [the Ivemeyer] house and got a CB base station and then [the men] come out and . . . got a ladder and everything." The co-defendant further testified that "Walter Belmer" passed them as they were leaving the scene of the crimes. Walter Belmer testified that during July of 1987 he saw the co-defendant and another unidentified person leaving the Ivemeyer house in a truck which matched the description of defendant's truck. Mr. Belmer testified that the co-defendant was on the passenger side of the truck. This evidence sufficiently corroborated the co-defendant's testimony that defendant was a participant of the burglary and theft by taking at the Ivemeyer residence. *Dobbs v. State*, 180 Ga. App. 714, 715 (1), supra. The evidence adduced at trial was sufficient to authorize the jury's finding that defendant was guilty, beyond a reasonable doubt, of the crimes charged in Counts 5 & 6 of the indictment. *Jackson v. Virginia*, 443 U. S. 307, supra.

(e) *Burglary of Varnell Hendley's storage building (Count 7)*. The co-defendant testified that he and defendant burglarized Varnell Hendley's storage building. The State contends that this testimony was corroborated by evidence that items stolen from Varnell Hendley's storage building were "recovered from a location in Coffee County, Georgia where they had been sold by [defendant]." We fail to find evidence in the record supporting this contention. The evidence shows that defendant sold some stolen items to Rozier Mills and that some of these items were recovered from Rozier Mills' place of business in Coffee County, Georgia, but it does not show that defendant sold the items taken during the burglary of Varnell Hendley's storage building to Rozier Mills. Further, we have examined the entire trial transcript and we find no evidence, outside the co-defendant's testimony, linking defendant to the burglary of Varnell Hendley's storage building. Consequently, defendant's conviction on Count 7 of the indictment must be reversed. See *Milton v. State*, 248 Ga. 192, 195 (2)

(282 SE2d 90).
*Judgment reversed. Sognier, C. J., and Carley, J., concur.*

DECIDED MARCH 11, 1991.

*Gary C. McCorvey,* for appellant.
*John C. Pridgen, District Attorney, Kathryn O. Fallin, Assistant District Attorney,* for appellee.