## A93A0838. MARTIN v. THE STATE.
### (434 SE2d 534)

POPE, Chief Judge.

Defendant Marvin Martin was convicted of two counts of armed robbery and one count of kidnapping. He appeals following the denial of his motion and amended motions for new trial.

1. Defendant challenges the sufficiency of the evidence to convict him of the armed robbery of James Hamm, arguing that his conviction for that offense was based solely on the uncorroborated testimony of an alleged accomplice. As to this issue, the evidence adduced at trial showed that between 11:00 p.m. and midnight on February 21, 1991 James Hamm drove to a C & S Bank on Old National Highway to make a deposit. Hamm exited his car, a red Mazda, and left the motor running. While he was standing at the automatic teller ma-

chine, two men approached him, ordered him not to move and drove off in his car. The alleged accomplice, Travis Williams, who was tried with defendant and also convicted on all charges, testified at trial that he was one of the two men who approached Hamm and robbed Hamm of his car. He further testified that he, the defendant, Carl Gilmore[1] and Darrell Boyd had all gone to Old National Highway that night for the purpose of finding a car to steal, and that he and Gilmore approached the victim while defendant and Boyd acted as look-outs. Williams testified that after they stole the car he and Gilmore drove back to where defendant and Boyd were waiting and picked them up.

Darrell Boyd, who was not indicted for any crime in connection with these events, testified at trial that he, along with Williams, Gilmore and the defendant, rode the bus to Old National Highway and then went to Williams' girl friend's house, where they stayed for two or three hours. Boyd testified they walked to the bus stop, but then Williams informed Boyd no more buses were running that night. According to Boyd, he and the defendant then walked away from Williams and Gilmore and sat outside a grocery store and talked. Approximately 15 minutes later, Williams and Gilmore drove up in a red car. Boyd testified he and the defendant got into the car, and when Boyd asked Williams about the owner of the car Williams told him that "they stole it." Williams then drove everyone home in the stolen car.

Williams and defendant's girl friend testified that Williams and the defendant met the next day at the defendant's girl friend's house and discussed stealing another car. The victim of the second armed robbery, Elizabeth McCrary, testified that she first noticed a red Mazda behind her at the intersection of Old Fairburn and Cascade Roads. The car continued to follow her onto Cascade Road, and McCrary noticed that the car was very close behind her. The car continued to get closer to McCrary and finally bumped her rear bumper. McCrary pulled to the side of the road to check on her infant daughter, who was riding in a child seat in the back seat of the car, and the red car pulled in behind her. McCrary said she got out of her car and that Williams and the defendant, who was driving, got out of the red Mazda. McCrary testified that while she and the defendant were talking about the collision, Williams "darted around" to the driver's side of her car and started to get in. McCrary testified she tried to stop Williams from getting into her car and that he pulled out a gun and told her he would kill her. McCrary then began screaming at Williams

---

[1] Gilmore was also indicted for the armed robbery of James Hamm, but was granted the right to be tried separately from defendant and Williams.

to give her her baby out of the car, but Williams drove away with the baby in the car. According to McCrary, defendant then got back in the red Mazda and followed Williams down the road and that a short time later she saw her car, followed by the red Mazda, traveling at a high rate of speed in the opposite direction on Cascade Road. McCrary's car, with her baby still inside, was recovered six to seven hours later at a gas station located near the apartments where both Williams and defendant lived.

Defendant testified at trial and denied his participation in the crimes charged. Defendant admitted he was in the vicinity of the crime when Hamm's car was stolen, but stated that he, along with Williams, Gilmore and Boyd, had gone to Old National Highway that night to meet friends. According to defendant, they waited several hours for the friends to arrive and then Williams and Gilmore left and returned a short time later with the red Mazda. Defendant testified that he did not realize the car was stolen until later. Defendant admitted he drove the car the next day, first going with Williams and Gilmore to a party in the car and then leaving the party with Williams to go pick up friends. Defendant testified that while en route to pick up his friends, he accidentally rear-ended McCrary's car and that Williams surprised him by stealing McCrary's car while he and McCrary were discussing the accident. Defendant denied he heard McCrary scream for her baby or knew the baby was in the car at the time the car was stolen. Defendant testified that he then drove the red Mazda back to the party, and that Williams returned to the party later that night.

" 'In Georgia, a defendant may not be convicted on the uncorroborated testimony of an accomplice. OCGA § 24-4-8. . . . The corroboration must be independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty. *Allen v. State*, 215 Ga. 455 (111 SE2d 70) (1959). "However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. (Cit.) Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support the verdict. (Cit.)" *Reaves v. State*, 242 Ga. 542, 543 (250 SE2d 376) (1978).' *Castell v. State*, 250 Ga. 776, 778 (1c), 780 (301 SE2d 234) [(1983)]." *Brown v. State*, 199 Ga. App. 18, 21 (4) (404 SE2d 154) (1991). We believe the accomplice's testimony was sufficiently corroborated in this case. Defendant was admittedly in the vicinity when Hamm's car was stolen, and the jury was authorized to disbelieve his testimony that he waited outside for several hours on a winter evening to meet unidentified friends. Moreover, defendant drove Williams and Gilmore to a party in the car the next day, and was driving the car both before and after the second armed robbery was commit-

ted. We conclude that the evidence adduced at trial, although not overwhelming, was sufficient to authorize the jury's finding that defendant was guilty, beyond a reasonable doubt, of the armed robbery of James Hamm. See *Belcher v. State*, 207 Ga. App. 117 (427 SE2d 88) (1993).

2. Contrary to defendant's contentions on appeal, the trial court's denial of defendant's motion to sever did not constitute an abuse of discretion under the facts of this case. *Murphy v. State*, 246 Ga. 626, 629 (2) (273 SE2d 2) (1980); *Randolph v. State*, 198 Ga. App. 291 (3) (401 SE2d 310) (1991).

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JULY 12, 1993 —
RECONSIDERATION DENIED JULY 28, 1993.

*Anna Blitz*, for appellant.

*Lewis R. Slaton, District Attorney, Vivian D. Hoard, Leonora Grant, Assistant District Attorneys*, for appellee.