A97A1243. MICHAEL v. STATE OF GEORGIA.
(486 SE2d 406)

ELDRIDGE, Judge.

Joseph Michael appeals from the trial court's order forfeiting his 1993 red Mercury Capri and $870 to the State. The State initially seized the vehicle after police found three boxes containing approximately forty pounds of marijuana in the Capri; the $870 was found in appellant's pocket pursuant to a search incident to arrest.

1. Appellant challenges the sufficiency of the evidence to support the judgment and contends that (1) the State failed to prove that he had knowledge about the contents of the boxes and (2) the boxes were found in his car only because the State had entrapped him into placing them there.

On appeal, we view the evidence in a light most favorable to the court's judgment and will not set aside the trial court's factual findings unless they are clearly erroneous. *Gearin v. State of Ga.*, 218 Ga. App. 390 (1) (461 SE2d 562) (1995); *State of Ga. v. Banks*, 215 Ga. App. 828 (2) (452 SE2d 533) (1994). A trial court's factual findings are not clearly erroneous if there is any evidence to support them. *Shook v. State of Ga.*, 221 Ga. App. 151, 152 (470 SE2d 535) (1996).

In this case, the trial court determined that the State met its burden of proving a prima facie case for forfeiture. This burden required the State to establish, by a preponderance of the evidence, that the Capri and the money fell into one of six categories of property declared to be contraband under OCGA § 16-13-49 (d). *Hinton v. State of Ga.*, 224 Ga. App. 49 (479 SE2d 424) (1997); *Pitts v. State of Ga.*, 207 Ga. App. 606 (2) (428 SE2d 650) (1993). One of these six categories, OCGA § 16-13-49 (d) (2), declares that the Capri and the money would be contraband if they were "directly or indirectly, used or intended for use in any manner to facilitate a violation of [OCGA § 16-13-30 (j)]. . . ." See *Hinton*, supra. In the case before us, the trial court found "by a preponderance of the evidence that the subject property was used or intended for use to facilitate a violation of the law."

The evidence showed that a Federal Express driver had attempted to deliver a box to a "Lori Morgan" at 1351 Brays Mill Trace; no one was at home, so the driver left a delivery slip stating that he would return at 2:00 p.m. with the package. Shortly thereafter, the box broke open in the back of the delivery truck; it appeared to contain marijuana, and the Federal Express driver called the police.

The police returned with the driver to 1351 Brays Mill Trace. The slip that had been left there with delivery information on it now included handwritten instructions to leave the package. The package was left, and the police placed the house under surveillance.

At 2:30 p.m., a woman retrieved the package. The police stopped her and she identified herself as Laura Mattox. Ms. Mattox stated that a man named "Joe," who drove a red Mercury Capri, was to pay her $250 per box to pick up three boxes at different locations and that this box, which was at her mother's house, was her last pick up. Another box was addressed to "Lori Madden" at 1713-B LaVista Road, Atlanta, and the third box was addressed to "Lori Marden" at 3345 Shannon Circle, Cumming; all of the addresses belonged to relatives of Ms. Mattox.

Laura Mattox further stated that "Joe," later identified as appellant Joseph Michael, would give her instructions regarding where to pick up boxes and where to deliver them, at which time she would be paid the $250 per box; normally Ms. Mattox delivered the boxes to appellant's home. This pattern had occurred three times previously.

On the morning of the incident date, appellant called Laura Mattox and told her "it's a busy day, I have three boxes coming in." Appellant instructed her that "there was one [box] coming to each of the three addresses that [she] had gotten boxes before" and that she was to pick up the packages for him.

After being detained, Ms. Mattox, in cooperation with the police,

called appellant and told him that her truck's brakes were broken; in order to complete the delivery of the boxes to appellant, she asked him to meet her at Timmers Chevrolet, where her vehicle had allegedly been taken for repairs. This telephone conversation was recorded. Appellant, driving his red Mercury Capri, arrived at Timmers Chevrolet to pick up the boxes. Laura Mattox, wearing a body wire, met him. The police videotaped the meeting. Appellant removed the three boxes from Ms. Mattox's vehicle and placed two in the trunk and one in the back seat of his Capri. He agreed to pay Laura Mattox the $750 after he had dropped her off at her mother's house. Thereafter, appellant was arrested.

Under these circumstances, we conclude that there was ample evidence to support the trial court's finding that the marijuana was to be transported in appellant's Capri, that $750 of the $870 in appellant's pocket was to be used to pay his drug courier, Laura Mattox, and that these items were contraband in that they were intended to be used to facilitate a violation of OCGA § 16-13-30 (j). Accordingly, the trial court's findings were not clearly erroneous with regard to the forfeiture of the Capri and $750. *Shook,* supra.

Appellant argues that the State failed to prove he had knowledge that the boxes contained marijuana. However, the State proved that: (1) appellant paid a woman $250 *per box*; (2) to pick up boxes addressed with false names; (3) which had been delivered to different locations other than appellant's home; and (4) instructed the woman to deliver the boxes to appellant's home. We find this circumstantial evidence sufficient to allow a trier of fact to determine that appellant knew what was in the boxes, the pick up and delivery of which he had so painstakingly planned.

Appellant also argues that the boxes belonged to Laura Mattox, and he only placed them in the back of his vehicle because he was "entrapped" into doing so by the State. However, this contention is directly contradicted by the testimony of Laura Mattox. Mattox testified that she had performed "courier services" for appellant several times wherein she delivered boxes directly to appellant's home. Moreover, Mattox testified as to appellant's specific statement on the incident date, "I have three boxes coming in," and appellant's subsequent instructions regarding her pick up and delivery of these boxes. Mattox's testimony was sufficiently corroborated by the testimony of the police officers and the introduction of the audio and video tapes, all of which demonstrated that appellant's appearance at Timmers Chevrolet in the red Capri was for the *purpose* of retrieving the boxes, which he promptly did; that appellant was carrying sufficient cash to pay Mattox $250 per box; and that appellant registered no protest or confusion at Mattox's suggestion that he pay her the money after transporting her to her mother's house. See, e.g., *Martin*

*v. State*, 209 Ga. App. 720, 722 (434 SE2d 534) (1993).

An entrapment defense consists of three elements: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime. *Gibson v. State*, 212 Ga. App. 301, 302 (441 SE2d 803) (1994). Appellant has failed to demonstrate any of these elements, and there is no entrapment where the agent merely furnishes an opportunity to a defendant who is ready to commit the offense. *Byrd v. State*, 211 Ga. App. 881 (1) (440 SE2d 764) (1994). In this case, the evidence showed that the police officers simply substituted their own location, Timmers Chevrolet, for the delivery of the drugs to appellant, in lieu of appellant's usual delivery locale, his own home. Appellant's violation of our laws governing the possession and distribution of marijuana remains the same.

2. While we have determined the trial court's order was correct in permitting the forfeiture of appellant's vehicle and $750 of the $870 seized from appellant, we are obliged to find that the State failed to carry its burden of proof with regard to the remaining $120 seized from appellant. The testimony of Laura Mattox was very specific with regard to the amount she was to be paid as a courier of appellant's drugs: $250 per box for the three boxes, i.e., $750. $870 was seized from appellant, and the State presented no evidence to support its contention that the additional $120 "represented" proceeds from previous marijuana sales. "Though it was properly subject to seizure because it was seized incident to his arrest as contemplated by OCGA § 16-13-49 (g) (2), the state still must prove that it was subject to forfeiture. Because the evidence is insufficient to support such a conclusion, we find that the state failed to carry its burden of showing that this portion of the money was subject to forfeiture under the Act. Therefore, the trial court erred in including the [$120] in the award, and we must reverse as to that portion of the judgment." *Pitts*, supra at 608.

Accordingly, we affirm the trial court's order as to the 1993 Mercury Capri and $750 of the money seized from appellant; we reverse as to the remaining $120 and remand this case for entry of a new judgment not inconsistent herewith.

*Judgment affirmed in part, reversed in part, and remanded with direction. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED APRIL 28, 1997.

Before Judge Stark.

*Alice C. Stewart*, for appellant.

*Daniel J. Porter, District Attorney, Dan W. Mayfield, Assistant District Attorney*, for appellee.