## 77804. PEABODY v. THE STATE.
### (378 SE2d 712)

SOGNIER, Judge.

David "Skip" Peabody appeals from his convictions on one count of burglary and seven counts of forgery in the first degree.

1. Appellant contends the trial court erred by admitting into evidence the statements he made to the police because the State failed to prove appellant knowingly and intelligently waived his right to counsel. At the hearing conducted pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), Detective Quarles of the Whitfield County Sheriff's Department testified that he interviewed appellant on July 16, 1987, on December 9, 1987, and two days thereafter at appellant's own request. Detective Quarles stated that he ascertained during the first interview that appellant was 34 years old with a two-year college degree. Quarles testified he then read appellant a form setting forth his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), including, inter alia, that appellant had the right to talk to a lawyer, to have the lawyer present with him while he was being questioned, and to have one appointed to represent him before any questioning, if he wished and could not afford to hire one. Detective Quarles stated appellant signed the form under the waiver, providing "I have read the above statement of my rights and I understand each of those rights, and having these rights in mind I waive them and willingly make a statement." Detective Quarles testified that appellant was likewise advised of his *Miranda* rights on both of the succeeding interviews and that appellant signed a second form waiving his rights at the December 9 interview. Detective Quarles stated that at each interview appellant seemed to understand his rights as they went over them, that appellant did not appear to be under the influence of any alcohol, drugs, or other intoxicants, that no threats or hopes of benefit or reward were made to appellant, and that appellant's statements were voluntarily made.

Appellant testified that at the time of the July 16 interview, he was under the influence of pain medication prescribed for a work-related back injury which "[s]lowed [him] down" but that he "had a pretty good bit of my wits together, except for the slowness." While appellant acknowledged he was read his *Miranda* rights at that time,

he stated he understood them to mean that he was entitled to a lawyer only before he went to court, not at the time of the questioning. At the second interview, appellant stated that because the detective did not "just come right out and say, 'You need a lawyer,'" that appellant did not understand he was supposed to have a lawyer with him before he volunteered any information. When asked whether he understood the rights read to him, appellant replied, "[n]ot deep down and heartily like I should've." On cross-examination, appellant acknowledged that he was not "a stranger to the criminal justice system," having been in court before on other charges in the past and having been read his rights before the subject incidents.

"We are satisfied that appellant's enumeration of error is without merit, and that appellant did knowingly, intelligently and voluntarily waive his right after being properly advised thereof. Factual and credibility determinations as to voluntariness of a confession, including factual and credibility determinations as to issues of rights waiver, are normally made by the trial judge and must be accepted by appellate courts unless such determinations are clearly erroneous. [Cits.]" *Johnson v. State*, 186 Ga. App. 801, 803 (368 SE2d 562) (1988).

2. Appellant contends the trial court erred by denying his motion for a new trial because the evidence was insufficient to support his convictions for the burglary of Capitol Adhesives, a business engaged in the manufacture of carpet adhesives, and for seven counts of forgery involving checks stolen from another business, North Georgia Yarn Shippers. Specifically, appellant contends that the testimony of accomplices was not sufficiently corroborated.

As to the burglary count, at trial appellant's co-defendant, Keith Barclay, testified that when appellant and Randy Thomas visited him at Capitol Adhesives, where Barclay was employed, they had discussed how easy it would be to burglarize the business, that appellant at that time broke into a locked tool box to examine its contents and told Barclay not to worry about the damage since "he was gonna come back and take it," and that Barclay showed appellant how to enter the business by pulling up the corner of the roll-up dock door. Barclay testified that the business was burglarized the night of his discussion with appellant and that when Barclay asked appellant if he had done it, appellant said yes, and that Barclay should have seen Randy Thomas' face when appellant wheeled over some cutting torches to cut open a vending machine on the premises.

A review of the evidence at trial reveals testimony by appellant that he and Randy Thomas talked to Barclay at Capitol Adhesives, at which time Barclay told them it would be easy to break into the business, and when appellant inquired how easily, Barclay demonstrated the vulnerability of the dock door. Appellant had stated to Detective Quarles, and testified as well at trial, that he had purchased tools

from Randy Thomas around the time of the Capitol Adhesives burglary and that he suspected, but had no proof, that the tools were stolen from that business.

The State also introduced as corroborating evidence the testimony of Charles Kirby, the Capitol Adhesives employee who discovered the burglary, who stated that there was no sign of forcible entry, but that entry could be made through the dock door by squeezing through the edge of it. Kirby also stated that he discovered the vending machine had been cut open by means of a torch and crowbars and that in addition to the money in the vending machine, 290 blank Capitol Adhesives checks had been taken as well as some three to four thousand dollars worth of tools. Detective Quarles testified that when he spoke to appellant on December 9, after he told appellant that someone "had used their trump card on him" (a phrase an informant had heard appellant use), appellant immediately responded that Keith Barclay was lying, even though Detective Quarles had not mentioned Barclay's name to appellant at that point.

As to the seven counts for forgery involving checks drawn on the account of North Georgia Yarn Shippers (NGYS), Billy McGuire testified that his stepbrother, Randy Thomas, gave him a number of NGYS checks already signed and made out in his (McGuire's) name. McGuire testified that Thomas, who was staying with appellant, told McGuire that there were "two guys" involved in acquiring the checks, but gave no names. McGuire testified that shortly after he began cashing the checks, he met appellant when he took his truck to appellant for some repair work on a throw-out bearing. McGuire stated he paid appellant $60 in cash for the work and did not offer to pay appellant with an NGYS check because Thomas had told him to keep quiet about the forged check scheme. McGuire testified that during the time he was cashing the forged checks, appellant came over to McGuire's apartment, told McGuire that he (appellant) was the "middle man" in the scheme, that he was the one who had taken the risks getting the NGYS checks, and demanded a larger cut of the cash. McGuire also testified that appellant stated that he (appellant) had been "doing this for years and I know what I'm doing." McGuire said Thomas subsequently brought him several more checks, but that these checks were drawn on the account of Capitol Adhesives. McGuire stated that he refused to participate any further in the scheme and that his only other contact with appellant was at a corner market at which time appellant had threatened him for informing on him.

The State's evidence corroborating McGuire's testimony consisted primarily of testimony regarding the similarities between the Capitol Adhesives burglary, where 290 checks were stolen, and the burglary at NGYS when the subsequently forged checks were taken. Detective Quarles stated that when questioned, appellant said he met

McGuire when he replaced a throw-out bearing in McGuire's truck and denied having ever seen any checks from NGYS. Although appellant's fingerprints were not found on the NGYS checks, Quarles asked appellant if there was any reason for his fingerprints being on the checks. Appellant responded by claiming that his fingerprints might be on one check because McGuire, when paying for the truck repair, initially presented appellant with a check similar in appearance to the NGYS check, which appellant held in his hand before returning it, stating he could not cash it and receiving cash instead. When appellant testified, he affirmed the contents of the statement made to Detective Quarles and stated that he knew McGuire and Thomas were the people involved in the scheme because, at some point after appellant repaired McGuire's truck, Thomas asked appellant if he would like to invest in a "quick cash" scheme, to which appellant testified he said no.

In order to warrant a conviction based upon the testimony of an accomplice, the circumstances must be such as, independently of the testimony of the accomplice, lead to the inference of the defendant's guilt. *Dennis v. State*, 201 Ga. 53, 56 (1) (38 SE2d 832) (1946). "It is well settled that ' "(w)hile a conviction based entirely upon the testimony of an alleged accomplice, uncorroborated by other competent evidence, will not be allowed to stand, corroboration is peculiarly a matter for the jury, and sufficient corroboration may consist of either direct or circumstantial evidence which connects the defendant with the crime, tends to show his participation therein, and would justify an inference of the guilt of the accused independently of the testimony of the accomplice." [Cits.]' [Cit.] Only slight corroborative evidence is required, and it need not be sufficient by itself to support a conviction. [Cit.]" *Davis v. State*, 178 Ga. App. 760, 762 (2) (344 SE2d 730) (1986). " '(P)resence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. [Cit.]' [Cit.]" *Howard v. State*, 181 Ga. App. 187 (351 SE2d 550) (1986).

Appellant's testimony that he participated in the conversation about how to burglarize Capitol Adhesives, while slight, was sufficient evidence to corroborate the testimony of the accomplice to that burglary, Barclay. See *Raines v. State*, 186 Ga. App. 239, 240-241 (2) (366 SE2d 841) (1988). We further hold that the evidence when considered in connection with the testimony of the accomplice was sufficient to enable any rational trier of fact to find appellant guilty of burglary beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Thus the trial court did not err by denying appellant's motion for a new trial on the burglary charge. See *Jones v. State*, 181 Ga. App. 651, 653 (1) (353 SE2d 593) (1987).

Likewise, we find the testimony of McGuire as to appellant's par-

ticipation in the forgeries to be corroborated. The fact that appellant committed the burglary of Capitol Adhesives, in which checks were stolen, provides evidence of a similar transaction that points to appellant's association and participation in an unlawful enterprise in which blank checks were stolen from businesses, then forged. " '(S)ufficient corroboration may consist of either direct or circumstantial evidence which connects the defendant with the crime, tends to show his participation therein, and would justify an inference of the guilt of the accused independently of the testimony of the accomplice. [Cits.]' [Cit.]" *Howard*, supra at 188. This corroborative evidence, together with the accomplice's testimony, was sufficient to enable a rational trier of fact to find appellant guilty of forgery beyond a reasonable doubt. *Jackson*, supra. Therefore, the trial court did not err by denying appellant's motion for new trial on the forgery counts.

*Judgment affirmed. Carley, C. J., and Deen, P. J., concur.*

DECIDED FEBRUARY 14, 1989.

*Harlan M. Starr*, for appellant.
*Jack O. Partain III, District Attorney*, for appellee.