A99A2504, A99A2505. BURNETTE v. THE STATE (two cases).
(527 SE2d 276)

BLACKBURN, Presiding Judge.

Upon the trial court's grant of his motion for out-of-time appeal, Raymond Scott Burnette appeals his convictions of three counts of conspiracy to commit violations of the Georgia Controlled Substances Act and felony-bail jumping. In his first appeal, Burnette challenges the sufficiency of the evidence on the conspiracy counts. And in his second appeal, Burnette contends that a fatal variance existed between the indictment and the evidence which required a mistrial on the bail jumping count. Because the evidence sufficiently supported Burnette's conspiracy convictions and the variance did not affect Burnette's substantive rights, we affirm.

### Case No. A99A2504

1. By three assertions of error, Burnette challenges the sufficiency of the evidence on each of the three counts of conspiracy to commit a violation of the Georgia Controlled Substances Act for which he was convicted.

> On appeal from a criminal conviction, our review of the evidence is guided by certain well-established principles. As recognized in cases such as *Shabazz v. State*, 229 Ga. App. 465 (1) (494 SE2d 257) (1997), the evidence is viewed in a light most favorable to the verdict; we do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); and the jury's verdict will be upheld as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

*Brown v. State*, 237 Ga. App. 761, 762 (516 SE2d 810) (1999).

In the present case, Burnette and several co-conspirators were indicted on three counts of conspiracy: one to possess with the intent to distribute and sell methcathinone, one to traffic in methamphetamine, and one to possess with the intent to distribute and sell methamphetamine.

"[I]t is unlawful for any person to . . . distribute . . . or possess with intent to distribute any controlled substance." OCGA § 16-13-30 (b). Methcathinone is a controlled substance listed as a Schedule I drug. See OCGA § 16-13-25 (3) (XX). Pursuant to OCGA § 16-13-31 (e), trafficking in methamphetamine is committed by "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine."

"A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." OCGA § 16-4-8. Therefore, in order to support the conspiracy convictions against Burnette, the State was required to first prove the existence of the conspiracy and then establish some act committed by one of the co-conspirators in furtherance of the conspiracy.

The evidence at trial revealed that the Appalachian Drug Task Force was using informants to uncover a drug manufacturing and distributing organization based in Indiana. Specifically, the task force was investigating the actions of Thomas Manues, an indicted co-conspirator from Indiana, and Charles Gaston, an indicted co-conspirator from Georgia. An informant testified that Manues brought drugs from "somewhere up north" to sell in Georgia. Several co-conspirators, including Deanna Bagwell, Delores Gaston, and Charles Gaston, pled guilty to, among other things, conspiracy to possess with the intent to distribute methcathinone, and they testified for the State in Burnette's trial.

In September 1995, several co-conspirators, including Manues, Gaston, and Burnette, were arrested as a result of the ongoing investigation. The police searched the home of Deanna Bagwell, where Burnette was found after he tried to conceal himself. The police also searched Manues' van and Gaston's residence. As a result of these searches, the police seized quantities of methcathinone, over 28 grams of methamphetamine, cutting agents, and marijuana. They also seized a Colt .380 handgun, a shotgun, and $867.

Specifically with regard to Burnette, the evidence revealed that Burnette accompanied convicted drug runners, took drugs with them, and knew they were transporting drugs. Burnette purchased acetone to cure the drugs.

When Burnette was arrested, his jacket pocket contained a bag of marijuana, several baggies of ephedrin, a bag containing an orange powdery substance and $867. The State's forensic scientist explained that ephedrin could be used to make methcathinone or methamphetamine. The orange powdery substance was not identified.

The state does not need to prove an express agreement between the parties in order to establish a conspiracy. "The essence of conspiracy is a common design, and conduct which discloses a common design may give rise to the inference of conspiracy. (Cit.)" *Waldrip v. State*, 267 Ga. 739, 747 (10) (b) (482 SE2d 299) (1997). "Presence, companionship and conduct before and after the commission of the alleged

offenses may be considered by the jury and are circumstances which may give rise to an inference of the existence of a conspiracy. (Cit.)" (Punctuation omitted.) *Guerra v. State*, 210 Ga. App. [102, 103 (1) (435 SE2d 476) (1993)]. Thus, a conspiracy may be proven by direct or circumstantial evidence. Id.

*Dalton v. State*, 237 Ga. App. 217, 222 (513 SE2d 745) (1999).

Viewing the evidence in the light most favorable to the verdict, we conclude that Burnette's conduct and companionship with Manues and Gaston were sufficient to authorize the jury to find him guilty beyond a reasonable doubt of the offenses for which he was convicted.

### Case No. A99A2505

2. In a separate trial, Burnette was also convicted of felony-bail jumping. OCGA § 16-10-51 (a). On appeal, he contends that the trial court erred in denying his motion for directed verdict after a variance in the location of his last known address was presented at trial.

OCGA § 16-10-51 (a) provides, in pertinent part:

Any person who has been charged with or convicted of the commission of a felony under the laws of this state and has been set at liberty on bail or on his own recognizance upon the condition that he will subsequently appear at a specified time and place commits the offense of felony-bail jumping if, after actual notice to the defendant in open court or notice to the person by mailing to his last known address or otherwise being notified personally in writing by a court official or officer of the court, he fails without sufficient excuse to appear at that time and place.

The felony-bail jumping indictment alleged that: (1) Burnette had been previously charged with three felony offenses; (2) he had been set at liberty on bail on the condition that he would appear for trial; (3) he had received notice of trial by mailing the calendar to his last known address — Route 1, Box 402M, Springfield, Illinois, 47462; (4) he had acknowledged the court appearance by calling his attorney; and (5) he failed to appear in court for a pre-trial motion and for the subsequent trial. During trial, it was acknowledged by the State that Burnette's correct address was Route 1, Box 402A, Springville, Indiana, 47462. The State further acknowledged that Burnette's copy of the trial calendar giving him notice of the trial dates was actually mailed to the wrong address.

Burnette contends that a fatal variance between the indictment

and the evidence exists because the State did not mail the court calendar to his last known address, as provided in the indictment. The State argues that the statute provides for notice to the defendant by several different methods and because it proved that Burnette received notice by one of those methods, no fatal variance existed.

> [The] discrepancy in the evidence does not constitute a fatal variance. Our courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal.

(Citations and punctuation omitted.) *Turner v. State*, 231 Ga. App. 747-748 (1) (500 SE2d 628) (1998).

In the present case, the indictment alleged that Burnette acknowledged the court appearance by calling his attorney. Additionally, Burnette's former attorney testified that he had informed Burnette both by telephone and in writing of the upcoming court dates. Therefore, it is clear that any variance in Burnette's last known address did not affect any substantive rights or Burnette's ability to prepare his defense.

*Judgments affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED DECEMBER 23, 1999.

*Conrad & Abernathy, Eric A. Ballinger*, for appellant.

*Roger G. Queen, District Attorney, William B. Britt, Assistant District Attorney*, for appellee.