A01A1112. MERCER et al. v. THE STATE.
(554 SE2d 732)

BARNES, Judge.

Sheila Mercer and Joseph Q. Champion appeal their convictions for possession of illegal drugs by ingestion. They moved to suppress drug test results acquired as a result of statements Mercer made while being detained during the execution of a search warrant in which she was not a named party and following Champion's detention and search. The trial court denied appellants' motion to suppress, accepted their stipulations of evidence, found them guilty, and sentenced them to probation, fines, and community service. On

appeal they assert that the trial court erred in denying their motion to suppress the drug test results, and that without these illegally obtained tests insufficient evidence supports the guilty verdicts. Because Mercer and Champion were illegally detained and handcuffed, we reverse the convictions.

1. "Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo review." (Citation and footnote omitted.) *State v. Mallard,* 246 Ga. App. 357 (541 SE2d 46) (2000). The evidence presented at the motion to suppress hearing revealed that on February 25, 2000, 11 deputies from the Bartow County Sheriff's Department executed a search warrant at the residence of Rosa Lee Vernon, expecting to find 25 to 30 people at a party there. The warrant authorized the search of the premises, curtilage, Vernon, and all persons present for illegal drugs, items related to the drug trade, and firearms.

As officers arrived on the scene, they saw the appellants as they were just getting out of their car, with no one standing close to them, but did not see them drive up. The deputies intended from the beginning to search everyone on the property for drugs and did so. They detained everyone, handcuffed them, and patted them down for weapons. Nothing in particular made the appellants appear dangerous, but they were handcuffed and searched along with everyone else, according to the deputies' plan.

While securing and searching the premises, officers found marijuana and various drug paraphernalia on some of the other guests and on the premises. After completing the search, the sergeant approached Mercer, who was still handcuffed. The sergeant did not advise Mercer of her *Miranda* rights, although she was in custody and was not free to leave. Instead, the sergeant asked her why she was there. Mercer answered that she and her boyfriend, Champion, were there to "get away" from things. The sergeant stated that the officers were searching for drugs, and Mercer responded that she had smoked marijuana two days before. She also volunteered that Champion had driven there and had a suspended license, which the sergeant verified. Based on this information, the sergeant arrested Champion for driving with a suspended license and arrested Mercer for possession of marijuana by ingestion.

The appellants were transported to jail, where an officer found marijuana on Champion during processing. Mercer orally consented to a drug test, read and signed a consent form, then provided a urine sample. Champion refused to consent to a drug test, so the sergeant obtained a warrant for his urine based on the drugs found on the premises and on Champion. Mercer's sample tested positive for methamphetamine and marijuana, and Champion's sample tested

positive for methamphetamine.

2. "A defendant aggrieved by an unlawful search and seizure may move the court . . . to suppress as evidence anything so obtained on the grounds that [t]he search and seizure without a warrant was illegal." OCGA § 17-5-30 (a) (1). The appellants argue their seizure was illegal because the police had no probable cause to initially detain and handcuff them.

The search warrant being executed when Mercer and Champion were detained and handcuffed gave the officers permission "to enter, search and seize within ten days of this date, the person, premises, or property described above, including the entire curtilage, outbuildings, vehicles, etc. and *all persons present at the time the search warrant is executed.*" (Emphasis supplied.)

The search warrant did not give the officers the authority to detain and search the appellants, because a general warrant, one that does not sufficiently identify the persons to be searched as is the case here, is void. *Collins v. State*, 187 Ga. App. 430, 431 (370 SE2d 648) (1988). However, " '[a] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.' *Michigan v. Summers*, 452 U. S. 692, 705 (101 SC 2587, 69 LE2d 340) (1981)." *Gober v. State*, 264 Ga. 226, 227 (2) (a) (443 SE2d 616) (1994). OCGA § 17-5-28 defines the limits of an officer's authority to detain or search as follows: "In the execution of the search warrant the officer executing the same may reasonably detain or search any person in the place at the time: (1) [t]o protect himself from attack; or (2) [t]o prevent the disposal or concealment of any instruments, articles, or things particularly described in the search warrant."

In this case, a deputy sheriff testified that ten or twelve officers executed the search warrant. They intended to search every person on the property "[b]ecause of the drugs located there and because of the — the drugs the informant had seen there and because of the fugitive being there." Everyone at the party was actually searched and handcuffed, and no one was free to leave. After the officers completed the search, they questioned each person and released "numerous individuals there that we had talked to and determined they had nothing to do with it. There was nothing found on them, and we turned them loose." The officer questioned Mercer to see if she should be detained or released.

"To support a search under OCGA § 17-5-28 (1), the officer must be able to articulate specific facts that would support a reasonable belief or suspicion that the person to be searched was armed and dangerous." *State v. Holmes*, 240 Ga. App. 332, 333 (525 SE2d 698) (1999). In *Holmes*, the police had a warrant authorizing them to

search premises occupied by a named couple, including the " 'entire premises and any persons found therein or thereupon,' " based on the allegation that the wife possessed cocaine. Id. at 332. Arriving at the address, they found Holmes in the yard talking to the husband, searched him, found cocaine, and arrested him. We noted that "it is illegal to search a person not named in the warrant but found on the premises to be searched, without independent justification for a personal search," and we found no justification for searching Holmes under OCGA § 17-5-28 (1) because nothing in the arresting officers' testimony indicated he was a threat. Id. at 333.

In the case before us now, the officer testified that neither Mercer nor Champion made any kind of threatening gesture and nothing in particular made him think the defendants were dangerous people. Because nothing about the defendants' demeanor would support a reasonable belief or suspicion that they were armed and dangerous, the State cannot justify the handcuffing and search under OCGA § 17-5-28 (1).

If the defendants had been located in a position that would enable them to help dispose of or conceal the drugs specified in the warrant, or if they were trying to escape from the premises, the officers' handcuffing and search may be justified under OCGA § 17-5-28 (2). *Holmes*, supra. In *Holmes*, we concluded the officers were not justified in arresting the defendant under this Code section because he was outside the house, not close to the person named in the warrant, and had been under constant surveillance. Id. at 333-334. Similarly, the defendants in the case before us were 40 to 50 feet from a closed garage in which the officers found the only person named in the warrant, and no one was standing near Mercer and Champion. Because the defendants were not inside any of the buildings to be searched and were not standing close to the person named in the warrant, the State cannot justify the handcuffing and search under OCGA § 17-5-28 (2). Therefore, the trial court erred in denying the defendants' motion to suppress.

3. Finally, we consider the defendants' argument that insufficient evidence supports their convictions. "[W]here an appellate court reverses a conviction on the basis that competent evidence was erroneously admitted, the appellate courts in Georgia will not and need not then review the remaining evidence on sufficiency grounds." (Footnote omitted.) *Hall v. State*, 244 Ga. 86, 94 (5) (259 SE2d 41) (1979). Evidence that was inadmissible but not incompetent, such as improper hearsay, is not "automatically excluded at a retrial but could be made admissible by laying the proper foundation." Id. at 93 (5). Conversely, incompetent evidence cannot be made admissible and should not be considered in determining the sufficiency of the evidence against the defendant. *Livingston v. State*, 268 Ga. 205, 209-

210 (1) (486 SE2d 845) (1997).

Because the evidence that flowed from Mercer's statement and Champion's arrest resulted from a statutorily invalid detention, that evidence is incompetent as well as inadmissible and therefore could not be introduced at a later trial. The inadmissible evidence was all the State had to prove their case; thus, the evidence against Mercer and Champion was insufficient for a rational trier of fact to find them guilty beyond a reasonable doubt of the offenses charged. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 6, 2001.

*Joshua D. Earwood*, for appellants.

*T. Joseph Campbell, District Attorney, Donald S. Smith, Assistant District Attorney*, for appellee.