A04A0574. LEWIS v. THE STATE.
(602 SE2d 278)

BLACKBURN, Presiding Judge.

Following a jury trial, William Lewis appeals his convictions for possession of methamphetamine and possession with intent to use drug-related objects, contending that the trial court erred by: (1) denying his motion for directed verdict based on insufficiency of the evidence; (2) admitting incriminating statements into evidence in violation of his *Miranda* rights; and (3) entering an illegal felony sentence on the misdemeanor count of possession of drug-related objects. For the reasons set forth below, we affirm Lewis's convictions but remand his case for resentencing on the charge of possessing drug-related objects.

1. Lewis contends that the trial court erred by denying his motion for directed verdict based on insufficiency of the evidence. We disagree.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Lewis] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a denial of a motion for a directed verdict of

---

[36] *Roberts*, supra at 474-475.

acquittal is whether under the rule of *Jackson v. Virginia,*[1] the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. Moreover, the test established in *Jackson* is the proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence.

(Citations and punctuation omitted.) *Lester v. State.*[2]

Viewed in the light most favorable to the verdict, the record shows that, after making several controlled purchases of methamphetamine from Lewis's co-defendant, David Bishop, police went to Bishop's home and requested consent to search his residence. Bishop voluntarily consented to this search, the validity of which is undisputed. When police entered Bishop's house and walked into his living room, Lewis was sitting on the couch with $250 in his hand.

In order to conduct an on-the-scene investigation, the police separated Bishop and Lewis. Bishop remained inside the house, while Lewis was asked to step outside with one of the officers. At that point, Bishop admitted to police that he sold small amounts of methamphetamine, and he stated that Lewis was his supplier. Bishop further stated that the money that Lewis had been holding when police entered his home was a payment for drugs. Bishop then led the police to a locker in his bedroom which contained a gram of methamphetamine, which Bishop indicated had been sold to him by Lewis. Bishop later testified that the methamphetamine in question had to have been supplied to him by Lewis because Lewis was the *only* person supplying him with methamphetamines for several months prior to the police search of his home.

After speaking with Bishop, the officer who was conducting the on-the-scene investigation walked outside to talk to Lewis in an attempt to determine the nature of the suspected criminal activity in Bishop's home and to investigate the truth of Bishop's allegations against Lewis. The investigating officer first asked Lewis for consent to search his person, and Lewis agreed. This consensual search revealed that Lewis had a digital scale in his pocket. This scale was the type generally used in the business of buying and selling drugs.

Once the investigating officer found the scales, Lewis immediately contended that the jacket that he was wearing did not belong to

---

[1] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Lester v. State,* 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997).

him and that he did not know that the scales were in the pocket. Lewis then explained to the investigating officer that, contrary to Bishop's claims, he was not Bishop's supplier and, instead, that he was at Bishop's house that evening to purchase drugs. Following this brief conversation, Lewis was allowed to leave the scene, as Bishop was the primary focus of the investigation. Only later was Lewis arrested and charged.

This evidence was sufficient to support Lewis's convictions. Nonetheless, Lewis erroneously contends that the State failed to present any evidence corroborating Bishop's testimony that Lewis was involved in a drug transaction at the time Bishop's home was searched, and, as such, his conviction for possession of methamphetamine must be reversed. This contention is erroneous.

> The rule is well established that, to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and are more than sufficient to merely cast on the defendant a grave suspicion of guilt. However, the sufficiency of the corroboration evidence is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting a defendant with the crime, the verdict is legally sufficient. The necessary corroboration may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime.

(Citations and punctuation omitted.) *Bradford v. State.*[3] Accord *Williams v. State*;[4] *Peabody v. State.*[5]

In this case, Bishop's testimony was corroborated by three major pieces of evidence. First, by his own admission, Lewis stated that he had gone to Bishop's house that evening to participate in an illegal drug sale. Second, Lewis was found in possession of a digital scale, and two police officers with extensive experience in the drug trade and associated crimes testified that the scale was the type commonly used in the consummation of drug transactions. And, third, at the time that Lewis was admittedly participating in a drug transaction,

---

[3] *Bradford v. State*, 261 Ga. 833, 834 (1) (412 SE2d 534) (1992).
[4] *Williams v. State*, 198 Ga. App. 725 (1) (402 SE2d 796) (1991).
[5] *Peabody v. State*, 190 Ga. App. 304, 305 (2) (378 SE2d 712) (1989).

he was discovered holding $250, an amount of money which an expert police officer testified was a common price for an "eightball" of methamphetamine. Viewing the evidence in the light most favorable to the verdict and recognizing that the necessary corroborating evidence need be only slight, as we must, it cannot be said that the jury erred by concluding that the corroborating evidence was sufficient to support Lewis's conviction for possession of methamphetamine. See *Parker v. State*[6] (defendant's statement placing him at scene of crime corroborates accomplice testimony); *Adkinson v. State*[7] (defendant's admitted knowledge of drugs sufficient to corroborate testimony of accomplice).

2. Lewis contends that the trial court erred by admitting incriminating statements made by him during the on-the-scene investigation. Specifically, Lewis argues that the statements he made to the investigating officer at the scene regarding his intent to buy drugs and ownership of the jacket he was wearing should have been excluded because he had not been informed of his *Miranda* rights at that point. This argument fails for two reasons.

First, Lewis made these statements only after a consensual search revealed that he was carrying a digital scale. Following the incriminating statements made by Bishop, this discovery, in and of itself, gave the officer reasonable suspicion to momentarily detain Lewis to inquire about the nature of the scale and its use.

Second, *Miranda* is simply not applicable to the case at hand. While it is true that the search in this case was made pursuant to consent rather than a search warrant, it is also true that a "law enforcement officer coming upon the scene of suspected criminal activity will conduct a general on-the-scene investigation and may detain temporarily anyone at the scene. Such detentions do not trigger the requirements of *Miranda v. Arizona*." (Punctuation omitted.) *Tolliver v. State*.[8] In this case, the statements made by Lewis were made during just such an on-the-scene investigation, and *Miranda* was not triggered.

Moreover, the evidence of record shows that the trial court was not clearly erroneous in its conclusion that Lewis was not in custody at the time that the contested statements were made. This conclusion is supported for two reasons. First, as stated above, Lewis was merely being questioned pursuant to a developing crime scene investigation, and during this investigation, police had the right to detain Lewis.

---

[6] *Parker v. State*, 249 Ga. App. 509, 511 (1) (548 SE2d 475) (2001).

[7] *Adkinson v. State*, 236 Ga. App. 270, 273 (4) (511 SE2d 527) (1999).

[8] *Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001).

Such legal detention, contrary to arguments otherwise, is not equivalent to being placed in police custody and does not trigger *Miranda* protections. Therefore, the investigating officer's testimony that Lewis was not free to leave during the on-site investigation provides no support for Lewis's claim of a *Miranda* violation.

Second, a reasonable person in Lewis's position would not believe that he was in custody. Here, the investigating officer testified that Lewis was never placed in custody, and it is undisputed that Lewis was never told that he was in custody. Furthermore, it is clear from the record that Bishop was the target of the investigation in this case, not Lewis. And, finally, it remains the undisputed fact that, following his brief discussion with police, Lewis was allowed to leave the scene. These facts support the trial court's conclusion that Lewis was never in custody, and his *Miranda* rights were never triggered.

Accordingly, this enumeration lacks merit.

3. Lewis contends that the trial court erred by giving him a felony sentence for the charge of possession of drug-related objects, a misdemeanor offense. The State concedes the impropriety of this sentence. As such, we must vacate Lewis's sentence on this crime, and we remand his case to the trial court for resentencing.

*Judgment affirmed. Andrews, P. J., Ruffin, P. J., Eldridge, Mikell and Adams, JJ., concur. Barnes, J., concurs in part and dissents in part.*

BARNES, Judge, concurring in part and dissenting in part.

While I agree that the State presented sufficient evidence to affirm Lewis's conviction of possession of drug-related objects, and that this case must be remanded for resentencing on that conviction, I do not agree that we should affirm Lewis's conviction of possession of methamphetamine. Therefore, I respectfully dissent in part from the majority opinion.

The evidence corroborating the testimony of Lewis's co-defendant, Bishop, consisted of cash, a pocket scale, and Lewis's statement to the investigating officer that he was present at Bishop's home to buy drugs, not sell them. The State must corroborate the accomplice's testimony by evidence, independent of the accomplice testimony, which establishes or infers direct participation in the offense charged, and is more than sufficient to merely cast on the defendant a grave suspicion of guilt. *Allen v. State*, 215 Ga. 455, 457 (111 SE2d 70) (1959). Accord *Gunter v. State*, 243 Ga. 651, 654-655 (256 SE2d 341) (1979); *Vaughn v. State*, 139 Ga. App. 565 (228 SE2d 741) (1976). Corroborating evidence must, at a minimum, be sufficient to establish the defendant's participation in the offense charged, without considering the accomplice's testimony. *Allen v. State*, supra, 215 Ga. at 458-459 (2); *Vaughn v. State*, supra, 139 Ga. App. at 569 (1).

The majority concludes that Lewis's statement that he was there to buy drugs, the $250 cash in his hand, and the scales in his pocket are sufficient to corroborate Bishop's testimony that, at some point, he may have purchased the gram of methamphetamine in his bedroom from Lewis. But Lewis's statement is inadmissible because he made it while he was in custody without receiving *Miranda* warnings.

At the *Jackson-Denno* hearing, the investigating detective testified three times that Lewis was not free to leave once the deputies entered Bishop's house, and that he directed another deputy to accompany Lewis outside while the investigator spoke with Bishop. After talking to Bishop, the investigator went outside "and tried to find the truth." He asked Lewis if it were true that he was there to sell drugs to Bishop, and Lewis said he was "just over here to buy drugs; I'm not selling them any drugs."

The trial court ruled that Lewis's statement that he was there to buy drugs was admissible, finding that Lewis was not in custody and "was not deprived of freedom of action in any significant way." The trial court held that a reasonable man in Lewis's situation would not have thought he was in custody, unlike in *Miranda*, in which the United States Supreme Court was "concerned about the situations where the defendant was questioned by police and sequestered in an interrogation-room type situation and was held away from the outside world incommunicado."

This search did not involve the execution of a search warrant. If that had been the case,

> [a] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. OCGA § 17-5-28 defines the limits of an officer's authority to detain or search as follows: "In the execution of the search warrant the officer executing the same may reasonably detain or search any person in the place at the time: (1) to protect himself from attack; or (2) to prevent the disposal or concealment of any instruments, articles, or things particularly described in the search warrant.

(Citations and punctuation omitted.) *Mercer v. State*, 251 Ga. App. 465, 467 (2) (554 SE2d 732) (2001). Nevertheless, in this case the officers were not executing a search warrant, and were not at Bishop's residence to arrest him, but only to seek his consent to search his home. They had no probable cause to arrest Lewis, and, in fact, did

not even expect Lewis to be there. This situation is therefore distinguishable from one in which the officers are permitted to detain everyone present while they execute a warrant.

We then consider whether Lewis was in custody. "For *Miranda* to apply a person must be taken into custody or otherwise deprived of his freedom of action in any significant way." (Citations omitted.) *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984). To determine whether Lewis's statements were custodial, we apply an objective standard and determine whether a reasonable person in his situation would have believed he was physically deprived of his freedom of action in a significant way. *Harrell v. State*, 204 Ga. App. 738, 739 (3) (420 SE2d 631) (1992). We will uphold the trial court's findings as to factual determinations and credibility unless they are clearly erroneous. *Lobdell v. State*, 256 Ga. 769, 773 (6) (353 SE2d 799) (1987).

In this case, there is no factual dispute about whether Lewis was in custody. He was. The investigating detective stated several times that Lewis could not have left the scene, and in fact he was guarded by another detective until the investigator went outside to "find the truth" from Lewis. This coercive situation is exactly what *Miranda* addressed. The trial court erred in determining that *Miranda* does not apply in this situation, and in admitting Lewis's statement into evidence during trial.

Eliminating the testimony of the accomplice and Lewis's statement leaves only the evidence that Lewis had cash in his hand and scales in his jacket pocket. As to the money, the only evidence that it may have been payment from Bishop to Lewis for a drug debt is Bishop's testimony that Lewis was one of his dealers and he owed Lewis money on a previous debt. The fact that the detective testified that $250 is the approximate cost of a certain amount of drugs does not independently corroborate that Lewis's $250 represented a drug payment. If that were true, then the police could themselves corroborate the testimony of an accomplice of anyone accused of a drug offense with cash in his pocket. Cash itself does not establish or infer direct participation in the offense of drug possession. *Allen v. State*, supra, 215 Ga. at 457. Because Bishop cannot corroborate his own testimony, the money is not corroborating evidence. *Milton v. State*, 248 Ga. 192, 197 (2) (282 SE2d 90) (1981).

Similarly, the only evidence linking the scales to the drugs is Bishop's testimony that Lewis was his dealer. No other evidence related the scales in Lewis's pocket to the gram of methamphetamine located in Bishop's bedroom cabinet. "Although the evidence presented may have created a suspicion that defendant was guilty of this act[,] this alone is not sufficient to support the conviction." *Neal v. State*, 152 Ga. App. 270, 271 (1) (262 SE2d 561) (1979).

Further, no evidence at all corroborates Bishop's testimony that he "probably" bought the drugs from Lewis. The drugs were clearly not in Lewis's possession when the sheriffs found them. They were not out in the open, but were located within a cabinet in Bishop's closed bedroom. Lewis had no keys to the residence, but was merely a visitor. With no corroboration of the co-defendant's testimony, I must conclude that the evidence was not sufficient for a rational trier of fact to find beyond a reasonable doubt that Lewis was guilty of methamphetamine possession. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Stevens v. State*, 245 Ga. App. 237, 239 (1) (537 SE2d 688) (2000).

For these reasons, I respectfully concur in part and dissent in part from the majority opinion.

DECIDED JULY 15, 2004.

*Avrett, Ponder & Withrock, William B. Barnwell*, for appellant.
*Kermit N. McManus, District Attorney, Mark P. Higgins, Jr., Assistant District Attorney*, for appellee.