### A05A1252. McWHORTER v. THE STATE.
(621 SE2d 571)

PHIPPS, Judge.

Kathy McWhorter was charged with possessing methamphetamine and conspiring with Jeffery Tripp and John Watwood to manufacture methamphetamine. As to the latter offense, the indictment alleged, "[I]n furtherance of said conspiracy Kathy McWhorter did an overt act, to wit: being present during the manufacture of

---

[6] OCGA § 16-9-33 (a).

methamphetamine and cleaning glassware used in the manufacture of methamphetamine to effect the object of the conspiracy." After a jury trial, McWhorter was convicted of both offenses. On appeal, she contends that the trial court erred by denying her motion for directed verdicts of acquittal and by imposing upon her a 30-year sentence for committing conspiracy. Because these contentions lack merit, we affirm.

1. McWhorter contends that the trial court erred by denying her motion for directed verdicts of acquittal.

A motion for a directed verdict of acquittal is granted only "[w]here there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty.'"[1] The standard for reviewing a denial of a motion for a directed verdict is whether, under the rule of *Jackson v. Virginia*,[2] the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense.[3] As an appellate court, we do not weigh the evidence or determine witness credibility.[4] We view the evidence in the light must favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[5]

So viewed, the evidence showed that on July 10, 2002, Chattooga County Sheriff's Office Patrol Division Commander Tommy Brownlow and Drug Task Force Agent Jackie Womack assisted another law enforcement officer execute an arrest warrant upon an individual spotted outside Tripp's residence. Near a window air conditioner of the residence, Brownlow and Womack detected the strong chemical odor of methamphetamine cooking. When Womack knocked on the residence door, he heard a great deal of movement taking place inside before the door was eventually opened by an adult female who claimed she was there to babysit children. Tripp emerged from a bedroom, denied that methamphetamine was being manufactured there, and consented to a search of the residence. Womack patted down Tripp, finding digital scales in his possession.

Brownlow and Womack entered the residence, where the chemical odor was stronger. There were about seven adults and two small children inside. Backup officers were summoned. Womack ordered the occupants to the living room, where an officer maintained surveillance on them. At least three of the adults, including Watwood, had emerged from the same bedroom as had Tripp.

---

[1] OCGA § 17-9-1 (a).

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Lewis v. State*, 268 Ga. App. 547, 547-548 (1) (602 SE2d 278) (2004).

[4] Id.

[5] Id.

During a walk-through of the residence, Womack encountered McWhorter standing in a bathroom with the door opened wide. He testified that "McWhorter [was] holding a [Mason] glass jar that was dripping wet as if she had just washed it off in the bathroom" and that four more "dripping wet" glass jars were discovered under the bathroom sink. The glass jar was seized from McWhorter, who was ordered to join the other occupants in the living room. After being handcuffed, she sat on the sofa, along with at least two of the other occupants, including Watwood.

Within three feet of where McWhorter had been standing, stashed in the bathroom's shower stall, hidden from view by an opaque shower curtain, was a large trash bag. It contained numerous coffee filters (some stained green, others stained purple, some wet, some dry with a white residue); a bottle of hydrogen peroxide; a bottle of rubbing alcohol; several homemade funnels with white residue; empty cans of starter fluid with holes punched in them; and Red Devil lye. Womack, another drug task force agent, and a forensic chemist, each with special training in methamphetamine labs, testified that these items are commonly associated with methamphetamine manufacturing.

Connected to the bathroom that had been occupied by McWhorter was the bedroom from which Tripp, Watwood, and others had emerged. The smell of methamphetamine being manufactured was strongest there. In a corner of the bedroom was a propane torch. In one closet was a hot plate and a cooler that appeared to have "just been tossed in there haphazardly." The cooler contained wet turkey basters, a plastic bottle with tubing taped to its lid, and two coffee pots (one containing a white residue and one containing a green residue). In another closet was a bag of red phosphorous. Another hot plate was found under the bed. A digital scale was also recovered from the bedroom. Womack and the forensic chemist testified that these items were also commonly used to manufacture methamphetamine or in the drug trade. In addition, personal items belonging to McWhorter were found in that bedroom: a prescription bottle, a notebook, a collection of letters, and a handgun.

The adult occupants were arrested and taken outside for transport to jail. One of the officers then saw a corner-bag of methamphetamine lying on a sofa cushion where McWhorter and Watwood had been sitting. In a second pat-down search of Tripp, over four hundred pseudoephedrine tablets contained in two bottles were found. The forensic chemist testified that this product was commonly used in methamphetamine manufacturing.

Womack testified that the glass jars discovered during the search of Tripp's residence had not been tested because the officers suspected that they had been "washed clean" and that their contents had been

dumped down the sink. Therefore, a sample of the contents of the bathroom sink pipe was collected. A test of that sample, however, failed to reveal the presence of any chemical commonly associated with manufacturing methamphetamine.

McWhorter's defense was that she was at the residence only to babysit the children.

(a) Regarding her motion for a directed verdict of acquittal on the conspiracy count, McWhorter argues that the state failed to show that she committed any overt act to effect the crime of methamphetamine manufacturing. She points out that none of the Mason jars was tested and that no incriminating evidence was adduced from the sample taken from the bathroom sink pipe.

> Conspiracy to commit a crime occurs when the accused, with one or more persons, conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy. OCGA § 16-4-8. The elements of conspiracy to commit a crime are conspiring and the performance of an overt act to effect the crime.[6]

"The essence of conspiracy is a common design, and conduct which discloses a common design may give rise to the inference of conspiracy."[7]

There is no merit in McWhorter's argument that the state failed to present evidence from which the jury would have been authorized to conclude that she committed an overt act to effect the crime of methamphetamine manufacturing. The evidence showed that when the officers arrived at Tripp's residence, methamphetamine was being manufactured inside; that an officer observed McWhorter handling a wet Mason glass jar while standing in the immediate vicinity of numerous other wet glass jars; and that glassware, particularly Mason jars, is commonly used in the manufacture of methamphetamine. From this evidence, the jury was authorized to find beyond a reasonable doubt that McWhorter had conspired to manufacture methamphetamine and that her handling of the glassware furthered that conspiracy.[8] Whether that evidence was overcome by other evidence that McWhorter apparently believes supported her defense was an issue for the jury.

---

[6] *Hendricks v. State*, 277 Ga. 61, 62 (2) (586 SE2d 317) (2003) (punctuation omitted).

[7] *Burnette v. State*, 241 Ga. App. 682, 683 (1) (527 SE2d 276) (1999) (citation and punctuation omitted).

[8] See generally *Bryan v. State*, 271 Ga. App. 60, 60-61 (1) (608 SE2d 648) (2004); *Van Morgan v. State*, 269 Ga. App. 715, 718-719 (2) (605 SE2d 120) (2004); *Burnette*, supra.

(b) Regarding her motion for a directed verdict of acquittal on the possession count, McWhorter argues that the only evidence against her was her spatial proximity to the methamphetamine. She points out that she had been in handcuffs while seated on the sofa where the drug was later found and that others had also been seated on the sofa. McWhorter relies on law that "[a] finding of [constructive] possession must be based upon some connection between the defendant and the contraband other than spatial proximity"[9] and that "merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime."[10]

Although the closing arguments were not transcribed, the parties seem to agree that the state pursued a theory of joint, constructive possession. And the record reveals that the trial court adequately explained to the jury that possession of contraband may be actual or constructive, joint or exclusive.[11]

McWhorter's argument fails because her possession conviction does not rest solely upon evidence that the methamphetamine was found on premises also occupied by others; nor did such conviction rest solely upon her spatial proximity to the contraband. A defendant's conduct before and after the offense are circumstances from which such a connection between the defendant and the contraband may be inferred.[12] Here, in addition to evidence showing that the methamphetamine was in McWhorter's immediate presence,[13] the state presented evidence that, prior to the discovery of the drug, McWhorter was conspiring to manufacture that same drug.[14] "Where there is evidence other than a defendant's own equal access connecting an accused to contraband, it is for the jury to determine guilt or innocence."[15] The totality of the evidence here did not demand a "not guilty" verdict on the possession charge, but authorized a finding that

---

[9] *Crowder v. State*, 271 Ga. App. 177, 180 (2) (609 SE2d 134) (2004) (punctuation and footnote omitted).

[10] *Williams v. State*, 207 Ga. App. 782, 784 (4) (429 SE2d 153) (1993) (citations omitted).

[11] See *Anderson v. State*, 166 Ga. App. 459, 460 (3) (304 SE2d 550) (1983) (a person who knowingly has direct physical control over a thing at a given time is in actual possession of it; a person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it; if one person alone has actual or constructive possession of a thing, possession is sole; if two or more persons share actual or constructive possession of a thing, possession is joint).

[12] See *Crowder*, supra.

[13] See *Wisdom v. State*, 234 Ga. 650, 654 (217 SE2d 244) (1975) (where drugs are found in the "immediate presence" of the defendant, a jury may be authorized to find they are "in the constructive possession" of the accused).

[14] See Division 1 (a), supra.

[15] *Williams*, supra.

McWhorter was in possession of the methamphetamine, even though there also was evidence authorizing a finding that others had equal access to the same contraband.[16] Whether the evidence that others had access to the contraband was sufficient to rebut the evidence that McWhorter was in possession of the drug was properly reserved for the jury.[17]

2. McWhorter contends that the trial court erred by imposing upon her a 30-year sentence for committing conspiracy. McWhorter cites OCGA § 16-4-8, which provides in pertinent part, "A person convicted of the offense of criminal conspiracy to commit a felony shall be punished by imprisonment for not less than one year nor more than one-half the maximum period of time for which [s]he could have been sentenced if [s]he had been convicted of the crime conspired to have been committed. . . ." Pointing out that, pursuant to OCGA § 16-13-30 (d), the maximum period of time for which a person could be sentenced if convicted of methamphetamine manufacturing is 30 years, McWhorter argues that her sentence of 30 years exceeds the statutory maximum.

"Where a crime is penalized by a special law, the general provisions of the penal code are not applicable."[18] McWhorter was indicted for conspiring to manufacture methamphetamine, a violation of the Georgia Controlled Substances Act. Her contention ignores the law specially penalizing that crime. OCGA § 16-13-33 mandates, "Any person who attempts or conspires to commit any offense defined in this article shall be, upon conviction thereof, punished by imprisonment not exceeding the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." There is no question that methamphetamine manufacturing is defined within the same article containing that Code section.[19]

> The most reasonable interpretation of the legislative intent in enacting OCGA § 16-13-33 was to supplant the general punishment provision with a specific (and potentially more harsh) punishment provision for attempt or conspiracy to possess controlled substances. Rather than

---

[16] See *Crowder*, supra at 180-181; *Garvey v. State*, 176 Ga. App. 268, 274-275 (6) (335 SE2d 640) (1985); compare *Williams*, supra.

[17] See *Crowder*, supra; *Garvey*, supra; *Ramsay v. State*, 175 Ga. App. 97, 99-100 (7) (332 SE2d 390) (1985).

[18] *Woods v. State*, 279 Ga. 28, 31 (3) (608 SE2d 631) (2005) (citations and punctuation omitted).

[19] See OCGA § 16-13-20 et seq.

one-half of the maximum sentence applicable to the substantive crime under OCGA § 16-4-[8], OCGA § 16-13-33 provides for potentially harsher punishment in the form of imprisonment not exceeding the maximum punishment prescribed for the Georgia Controlled Substances Act offense, the commission of which was the object of the attempt or conspiracy. Here, the two sentencing statutes are mutually exclusive and there is no uncertainty as to which applies — OCGA § 16-13-33 renders OCGA § 16-4-[8] inapplicable in prosecutions under the Georgia Controlled Substances Act.[20]

Accordingly, there is no merit in McWhorter's argument that the trial court erred in imposing upon her a 30-year sentence for conspiring to manufacture methamphetamine.[21]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 27, 2005.

*Christopher A. Townley*, for appellant.

*Herbert E. Franklin, Jr.*, District Attorney, *Michael J. Moeller*, Assistant District Attorney, for appellee.

---

[20] *Woods*, supra at 30-31 (citations omitted).
[21] See OCGA §§ 16-13-33; 16-13-30 (d); *Woods*, supra at 30-31.